## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**CALVIN GO,**

     **Plaintiff,**

**v.**

**BOARD OF REGENTS FOR
THE UNIVERSITY SYSTEM
OF GEORGIA; AUGUSTA
UNIVERSITY; DR. STEVE
WRIGLEY; DR. CAROLE HANES;
DR. NANCY YOUNG;
DR. CAROLE LEFEBVRE; and
DR. BROOKS KEEL,**

     **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:18-CV-3233-MHC**

## ORDER

This case comes before the Court on Plaintiff's Emergency Motion for

Preliminary Restraining Order [Doc. 2] and Defendants' Motion to Dismiss

Plaintiff's Amended Complaint [Doc. 9].  Plaintiff has not responded to

Defendants' Motion to Dismiss.

## I.  BACKGROUND

Plaintiff was a dental student at the Augusta University's Dental College of

Georgia ("DCG") and enrolled in the Dental Program in the fall of 2017.  Am.

Compl. for Damages, Declaratory, and Injunctive Relief [Doc. 8] ("Am. Compl.")

¶ 1.  On December 8, 2017, Plaintiff sat for his fifth DBIO-5001 biochemistry exam.  Id. ¶ 27.  The proctor of that exam found notes in Plaintiff's possession and reported her findings which resulted in a formal complaint being filed against Plaintiff on December 11, 2017.  Id. ¶¶ 32-37; Letter dated Dec. 11, 2017 [Doc. 8-2] ("Code of Conduct Compl.").  The Code of Conduct Complaint alleged that Plaintiff violated Section III, Subsections C, F, and Q of the DCG Student Code of Conduct ("Code of Conduct").  Am. Compl. ¶ 38; Code of Conduct Compl.

On December 11, 2017, Plaintiff met with Dr. Carole Hanes ("Hanes") and Dr. Nancy Young ("Young") to discuss the process through which the Code of Conduct Complaint would be adjudicated and was informed that he was not permitted to retain legal counsel to assist him during the process.  Am. Compl. ¶¶ 42-43.  During a second meeting with Hanes and Young, Plaintiff alleges that he (1) was intimidated into verbally admitting a technical violation of the Code of Conduct, (2) agreed to waive his right to attend the hearing that was going to be held to consider the Code of Conduct Complaint, and (3) signed a guilty plea.  Id. ¶¶ 44-48; Regular Case Written Plea Form [Doc. 8-7 at 1] ("Guilty Plea"); Waiver of Hearing Form [Doc. 8-7 at 2] ("Hr'g Waiver").

In his Guilty Plea, Plaintiff plead guilty to Standards C, F, and Q of the Code of Conduct, which are quoted in their entirety.  Guilty Plea.  The Guilty Plea also stated:

> I realize than an investigation of the allegation(s) will be made, and that a full Code of Conduct Hearing may be held to determine my guilt or innocence.  I also acknowledge that I may plead guilty at any time during this process by signing the Waiver of Hearing Form (Appendix E).
>
> I hereby waive my right to a hearing on the charges that I have been involved in a violation of the Code of Conduct of the Dental College of Georgia at Augusta University.  I understand that the recommendation of the Hearing Subcommittee will be forwarded to the Dean for his or her consideration.
>
> I have been informed of my rights in this matter and I agree to waive those rights.  I understand that I retain my right to appeal any decision reached in this matter.  I execute this waiver of my own free will and with full understanding of my actions and their possible consequences.

Id.  Plaintiff also executed the Waiver of Hearing Form, which stated in relevant part:

> I, Calvin Go, hereby waive my right to a hearing on charges that I have been involved in a violation of the Code of Conduct of the Dental College of Georgia at August University and I agree to accept the decision of the Hearing Subcommittee in this matter.
>
> I have been informed of my rights in this matter and I agree to waive those rights.  I understand that I retain my right to appeal any decision reached in this matter.
>
> I execute this waiver of my own free will and with full understanding of my actions and their possible consequences.

Hr'g Waiver. Plaintiff signed both documents on December 12, 2017.

A DCG Student Code of Conduct Subcommittee ("the Subcommittee") held a hearing on January 29, 2018. Am. Compl. ¶ 54. Because Plaintiff pled guilty to the violations being considered, the Subcommittee did not meet to determine whether Plaintiff in fact violated the Code of Conduct, but instead met to make a recommendation to the Dean as to what would be an appropriate sanction. Tr. of Jan. 29, 2016 Subcommittee Hr'g [Doc. 8-1] at 2; Am. Compl. ¶ 55. Plaintiff submitted a statement for the Subcommittee to review at the hearing in which he admitted to violating one subsection of the Code of Conduct (Subsection C, possessing unauthorized materials during an examination), but denied cheating on the test, lying about cheating, or conducting himself in an unprofessional manner. Am. Compl. ¶ 60; Statement [Doc. 8-6].

On February 6, 2018, DCG's Dean, Dr. Carole Lefebvre ("Lefebvre"), sent a letter to Plaintiff indicating that she decided to suspend him for the 2017-18 academic year, but would permit him to enroll the following year as a freshman, whereupon he would be placed on probation for three semesters, would lose any scholarship or educational award loans, and would lose the privilege of representing DCG in any official capacity. Feb. 6, 2018 letter [Doc. 8-3]; Am. Compl. ¶ 75. The decision announced by Lefebvre was more severe than the

4

recommendation of Plaintiff's professors, who noted that Plaintiff showed a mastery of the material in his course (despite the questions surrounding the exam in question), and recommended that Plaintiff be allowed to pass the course and continue in the program with his classmates. Am. Compl. ¶¶ 69-71. Plaintiff appealed the decision announced by Lefebvre on February 12, 2018. Id. ¶ 76. Plaintiff met with Kathy Browder ("Browder"), the Vice President of Student and Faculty Affairs, about his appeal on March 7, 2018. Id. Browder denied his appeal on April 5, 2018. Id.; Letter dated April 5, 2018 [Doc. 8-5] ("First Appeal Denial"). Plaintiff appealed Browder's decision to Brooks Keel ("Keel"), President of Augusta University, which Keel denied on April 20, 2018. Am. Compl. ¶¶ 77-78; Letter dated April 20, 2018 [Doc. 8-8] ("Second Appeal Denial"). With the assistance of counsel, Plaintiff appealed Keel's decision to the Board of Regents for The University System of Georgia ("Board of Regents") on May 23, 2018, which was denied on August 15, 2018. Am. Compl. ¶ 79.

Based on the foregoing, Plaintiff's Amended Complaint includes the following four claims: a Section 1983 Procedural Due Process claim against all Defendants in their official capacity (Count 1); a Section 1983 Substantive Due Process claim against the individual Defendants in their individual capacity (Count 2); a Section 1983 Equal Protection under the Fourteenth Amendment claim

against all Defendants in their official capacity (Count 3); and a Section 1985 Conspiracy to deprive Plaintiff of his civil rights claim against all Defendants in their official capacity (Count 4).  Am. Compl. ¶¶ 81-105.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pled facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. <u>McGinley v. Houston</u>, 361 F.3d 1328, 1330 (11th Cir. 2004); <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pled allegations as true, but these allegations must also be construed in the light most favorable to the pleader. <u>Powell v. Thomas</u>, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

## III.   ANALYSIS

Defendants argue that Plaintiff's Amended Complaint should be dismissed for the following reasons: (1) Plaintiff's Amended Complaint is untimely, (2) Augusta University lacks capacity to be sued, and (3) Plaintiff fails to state a claim against the remaining Defendants. Plaintiff has not filed a response to Defendants' Motion to Dismiss. <u>See</u> <u>Kramer v. Gwinnett Cty.</u>, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed"); LR 7.1B,

NDGa. ("Failure to file a response shall indicate that there is no opposition to the motion."). The Court will consider Defendants' arguments *seriatim*.

### A.     The Court Grants Plaintiff Leave to Amend His Complaint.

As a preliminary matter, Defendants argue that Plaintiff should not be permitted to amend his Complaint as a matter of right because Plaintiff missed the deadline by one day. See Defs.' Br. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. [Doc. 9-1] ("Defs.' Br.") at 5-6. Rule 15(a)(1) states that a litigant can amend its pleading as a matter of course if it is done within twenty-one days after a responsive pleading was filed. FED. R. CIV. P. 15(a)(1). Defendants filed their motion to dismiss Plaintiff's original Complaint [Doc. 6] on August 9, 2018. Under Rule 15(a)(1), Plaintiff had until August 30 to file an amended complaint as a matter of course, but Plaintiff filed his Amended Complaint one day later, on August 31, 2018. However, Rule 15(a)(2) instructs that a party can amend his complaint with leave of court and that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Accordingly, the Court **GRANTS** Plaintiff leave to amend his complaint *nunc pro tunc*, accepts the Amended Complaint [Doc. 8] as the operative complaint in this case, and **DENIES** Defendants' Motion to Dismiss on this ground.

**B.    Augusta University Lacks Capacity to be Sued.**

Defendants argue that Augusta University must be dismissed as a defendant in this case because it lacks the capacity to be sued. Defs.' Br. at 6-7. The Court agrees. In a federal court, the capacity of an entity to be sued is determined by the law of the state where the court is located. See FED. R. CIV. P. 17(b)(3). The State of Georgia recognizes only three classes as legal entities capable of suing or being sued: (1) natural persons; (2) corporations; and (3) quasi-artificial persons that the law recognizes as being capable to sue. Ga. Insurers Insolvency Pool v. Elbert Cty., 258 Ga. 317, 318 (1988). The Georgia Constitution provides that "[t]he government, control, and management of the University System of Georgia and all of the institutions in said system shall be vested in the Board of Regents of the University System of Georgia." Ga. Const. art. VIII, § 4, ¶ I(b); see also O.C.G.A. § 20-3-51 ("The government, control, and management of the university system and all of its institutions shall be vested in the board of regents.").

The Supreme Court of Georgia has established that individual colleges and universities are not entities capable of suing or being sued in the State of Georgia. See McCafferty v. Med. Coll. of Ga., 249 Ga. 62, 64-65 (1982) (discussing the establishment of the Board of Regents and its acquisition of powers of the Trustees

9

of the University of Georgia, including the power to sue and be sued), <u>overruled on other grounds</u>, <u>Self v. City of Atlanta</u>, 259 Ga. 78, 79 (1989).  Because Augusta University does not have the capacity to be sued, Plaintiff's claims against it must be dismissed.  <u>See</u> <u>Bowers v. Bd. of Regents of the Univ. Sys. of Ga.</u>, No. 1:11-CV-228-ODE, 2012 WL 12893538, at *5 (N.D. Ga. Mar. 20, 2012), <u>aff'd</u>, 509 F. App'x 906 (11th Cir. 2013) (dismissing a lawsuit against the Medical College of Georgia because it was not subject to suit under Georgia law).  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Augusta University.

### C.    Plaintiff's Section 1983 and 1985 Claims Against Defendants in Their Official Capacities (Counts I, III, and IV) are Barred.

Plaintiff's Section 1983 claim for procedural due process violations is against all Defendants in their official capacities and seeks monetary damages as well as injunctive relief.  Am. Compl. ¶¶ 81-89 (Count 1).  Additionally, Plaintiff's Section 1983 claim for deprivation of equal protection is against all Defendants in their official capacities and seeks monetary damages.  <u>Id.</u> ¶¶ 95-99 (Count 3).  Finally, Plaintiff's Section 1985 claim is against all Defendants in their official capacities and seeks monetary damages.  <u>Id.</u> ¶¶ 100-05 (Count 4).

As shown below, Plaintiff's Section 1983 and 1985 claims against Defendants in their official capacities for money damages are barred by Eleventh

Amendment immunity.  Further, Plaintiff's Section 1983 claims against Defendants in their official capacities for injunctive or declaratory relief fail as a matter of law.

### 1.    Claims for Monetary Damages

The Eleventh Amendment bars actions against a state or its agencies, departments, or officials, absent a waiver by the state or Congress, when the state is the real party in interest or when state officials are sued in their official capacities.  Ky. v. Graham, 473 U.S. 159, 169 (1985).  The Board of Regents for the University System of Georgia is a state entity for Eleventh Amendment purposes.  See O.C.G.A. § 20-3-51; Sarver v. Jackson, No. 2:08-CV-0077-RWS, 2008 WL 4911836, at *3 (N.D. Ga. Nov. 13, 2008) (applying Eleventh Amendment immunity to North Georgia Technical College as a state agency), aff'd, 344 F. App'x 526 (11th Cir. 2009).

The individual Defendants, all employees of Augusta University who are sued in their official capacities, are state officials.  See Sarver v. Jackson, 344 F. App'x 526, 528 (11th Cir. 2009) (affirming that North Georgia Technical College employees were state officials).  Accordingly, by suing these Defendants in their official capacities, Plaintiff is suing the State of Georgia.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her

official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal quotation marks omitted). The Eleventh Amendment bars lawsuits against a state or its officials and "Congress has not abrogated states' immunity from § 1983 suits. Nor has . . . the Board of Regents waived its Eleventh Amendment immunity. Therefore, the Eleventh Amendment bars . . . § 1983 claims against . . . the Board of Regents." Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1301-02 (11th Cir. 2007) (internal punctuation and citation omitted).

Because the Board of Regents and the individual Defendants have not consented to be sued under 42 U.S.C. §§ 1983 or 1985, Plaintiff's Section 1983 and 1985 official capacity claims for (1) monetary damages based on the alleged violation of his procedural due process rights (Counts 1 and 4), and (2) monetary damages based on the alleged deprivation of his equal protection rights under the Fourteenth Amendment (Count 3) fail as a matter of law. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates Plaintiff's procedural due process claim for money damages against Defendants in their official capacity (Count I), Plaintiff's equal protection claim against Defendants in their official

capacity (Count III), and Plaintiff's Section 1985 claim against Defendants in their official capacity (Count IV).

### 2.    Claims for Injunctive Relief

Plaintiff also seeks "declaratory and injunctive relief" for the alleged procedural due process violations in Count I. Am. Compl. ¶ 89. Specifically, Plaintiff seeks an order (1) reinstating him as a second-year dental student at DCG, (2) directing Defendants to remove any negative information from his academic file, and (3) preventing Defendants from inhibiting Plaintiff from completing his dental school career. Am. Compl., Prayer for Relief.

The Eleventh Amendment does not prevent granting injunctive and declaratory relief against a state official in his official capacity when the injunction seeks prospective relief to prevent ongoing or future federal constitutional violations. See Wells v. Columbus Tech. Coll., No. 4:11-CV-79 CDL, 2012 WL 1300276, at *4 (M.D. Ga. Apr. 16, 2012), aff'd, 510 F. App'x 893 (11th Cir. 2013). In that circumstance, prospective injunctive relief to prevent ongoing or future violations "is not treated as an action against the state, and such relief is thus not barred by the Eleventh Amendment." Id. (citing Ex parte Young, 209 U.S. 123 (1908) and Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)).

To determine whether a claim seeking injunctive or declaratory relief is a claim seeking prospective relief to prevent future constitutional violations, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (alteration in original) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)). Declaratory relief is available only when there are ongoing or threatened violations of federal law. See Green v. Mansour, 474 U.S. 64, 73 (1985).

With regard to the first two aspects of the injunctive relief Plaintiff seeks (reinstatement and removal of negative information from file), the Court finds that Plaintiff has not alleged a claim for prospective relief to prevent future violations of his federal constitutional rights. Instead, he seeks injunctive and declaratory relief to remedy alleged past violations of his constitutional rights. Therefore, his claims for injunctive and declaratory relief are not permitted by Ex parte Young and are barred by the Eleventh Amendment. See Wells, 2012 WL 1300276, at *4 (dismissing injunctive and declaratory relief claims brought by suspended student against university and its officials because the plaintiff was attempting to "remedy alleged past violations of his constitutional rights.").

With regard to the third aspect of the injunctive relief Plaintiff seeks (preventing Defendants from inhibiting Plaintiff from completing his dental school career), the Court finds that Plaintiff has failed to allege that he is being subjected to ongoing or threatened violations of federal law that would preclude him from completing his schooling at DCG.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's Section 1983 claims against Defendants in their official capacity (Counts I, III, and IV) to the extent those claims seek injunctive and declaratory relief.

### D. Plaintiff Fails to State a Claim for Procedural Due Process.

Even if Plaintiff had asserted his claim for procedural due process against Defendants in their individual capacities, that claim would fail as his allegations fail to state a claim. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotations and citation omitted).

> What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances. That flexible standard was translated by the Goss court[1] to mean that high school students facing the deprivation of a property right by suspension from school must, at a minimum, be given some kind of notice and afforded some

---

[1] Goss v. Lopez, 419 U.S. 565, 577-78 (1975).

> kind of hearing. In <u>Dixon v. Ala. State Bd. of Educ.</u>, 294 F.2d 150 (5th Cir.), we broadly defined the notice and hearing required in cases of student expulsion from college: "[A]n opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required."

<u>Nash v. Auburn Univ.</u>, 812 F.2d 655, 660 (11th Cir. 1987). The manner and scope of such due process protections vary according to the interests involved. Students "have the right to respond [to the charges], but their rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." <u>Id.</u> at 664.

> To state a section 1983 claim for violation of procedural due process, a plaintiff must allege both a deprivation of some right protected by the due process clause and that the state refused to provide a process adequate to remedy the alleged procedural deprivation. Where adequate state remedies exist, but a plaintiff fails to take advantage of them, the plaintiff can state no violation of procedural due process. When determining the existence of an adequate state remedy, we look not only to the process employed by the board, agency or other governmental entity whose action is in question, but also to the remedial process state courts would provide if asked.

<u>Duva v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 654 F. App'x 451, 454-55 (11th Cir. 2016) (internal punctuation and citation omitted).

The factual basis of Plaintiff's procedural due process claim is his allegation that Defendants Hanes and Young misrepresented the effect of signing the Guilty Plea. Am. Compl. ¶¶ 84-86. Specifically, Plaintiff alleges that he was told he was

pleading guilty to only one subsection of the Code of Conduct and that if he signed the Guilty Plea he would receive less severe sanctions at sentencing.[2]  Id.  ¶¶ 84-85.  Plaintiff alleges that these misrepresentations precluded him from making an informed decision with regard to the Guilty Plea.  Id. ¶¶ 85-86.

Taking the allegations in Plaintiff's Amended Complaint as true, the Court finds that Plaintiff received sufficient notification of the charges against him and given an opportunity to be heard to present his defense, by virtue of live participation and a written statement.  Plaintiff elected the latter, but this does not negate the fact that he was afforded an opportunity to be heard in a meaningful manner sufficient to meet his due process rights.  See Sarver v. Jackson, No. 2:08-CV-0077-RWS, 2008 WL 4911836, at *3 (N.D. Ga. Nov. 13, 2008), aff'd, 344 F. App'x 526 (11th Cir. 2009) (dismissing student's procedural due process claims where she "was adequately notified of the charges against her and given an opportunity to be heard and present a defense," but elected not to attend the hearing resulting in her suspension).

---

[2] The Court notes that the face of the Guilty Plea signed by Plaintiff in which three subsections of the Code of Conduct are listed belies his allegation that he thought he was pleading guilty to the violation of only one subsection of the Code of Conduct.  See Guilty Plea.

Even if this Court were to find that Plaintiff sufficiently has alleged a deprivation of a due process right related to the initial adjudication of the Code of Conduct Complaint lodged against him, "a constitutional due process violation occurs only after the state refuses to provide a process adequate to remedy that procedural deprivation." Duva, 654 F. App'x at 455. Plaintiff's Amended Complaint alleges that, after the decision on his Code of Conduct Complaint was announced, he was afforded an opportunity to appeal the decision to the Vice President of Student and Faculty Affairs. Am. Compl. ¶ 76. Once the first appeal was denied, and he was afforded an opportunity to appeal that decision to the President of Augusta University. Id. ¶ 77. Once this appeal was denied, Plaintiff was afforded an opportunity to appeal the President's decision to the Board of Regents. Id. ¶¶ 78-79. Plaintiff availed himself of all of these appeals, the final one with the assistance of counsel. Id. Plaintiff does not allege that he was denied any process that he was due in appealing the original decision suspending him from the 2017-18 academic year. See Am. Compl.

Moreover, in addition to the process afforded by the Augusta University process, Plaintiff has a mandamus action as an available remedy to his alleged procedural due process violation, see O.C.G.A § 9-6-20, and he has not alleged that he availed himself of this remedy. See Am. Compl. This is fatal to his claim

for procedural due process. <u>Coates v. Natale</u>, 409 F. App'x 238, 240 (11th Cir. 2010) (affirming the dismissal of a procedural due process claim where the plaintiff failed to avail herself of the available state court writ of mandamus procedure); <u>see also</u> <u>Wells</u>, 2012 WL 1300276, at *7 ("A plaintiff fails to state a procedural due process claim when he fails to avail himself of a writ of mandamus when it is available.").

Because Plaintiff has not alleged any facts that would demonstrate that remedial procedures were unavailable to him or were otherwise inadequate to address his concerns with the handling of the Code of Conduct Complaint lodged against him,[3] Plaintiff has failed to state a claim for a violation of procedural due process. <u>See</u> <u>Wells</u>, 510 F. App'x at 897 (affirming the dismissal of a procedural due process claim brought by a suspended student, holding that "[t]he Fourteenth Amendment only requires the opportunity for procedural due process, and the remedy need not be ideal."); <u>Duva</u>, 654 F. App'x at 455 ("Because Duva alleged no facts showing that he asked for remedial procedures, that the state refused to

---

[3] Plaintiff alleges that "the State of Georgia's administrative procedures will not provide [him] with adequate pre- or post- deprivation remedy to cure the erroneous deprivation of his property rights and liberty interests," but does not explain how they would be inadequate or how the appellate process he did avail himself of was inadequate. Am. Compl. ¶ 88.

make available such procedures, or that the state's procedures were otherwise unavailable to Duva or inadequate to remedy the alleged procedural deprivation, Duva—as a matter of law—has failed to state a claim for violation of procedural due process.").

### E.    Plaintiff's Substantive Due Process Claim Against Defendants in Their Individual Capacities Fails as a Matter of Law.

Plaintiff alleges that Hanes and Young told him that he could not consult with counsel prior to signing the Guilty Plea, and that this effectively denied him the ability to seek counsel and thereby violated his substantive due process rights.[4] Am. Compl. ¶¶ 90-94.  Plaintiff alleges that this was a violation of his Sixth Amendment right to counsel.  Id. ¶ 94.  "But the Sixth Amendment does not govern civil cases," and certainly does not govern the proceeding that adjudicated Plaintiff's Code of Conduct violations.  Turner v. Rogers, 564 U.S. 431, 441 (2011).  Instead, the Fourteenth Amendment's Due Process Clause governs this case and the substantive due process rights protected are only the "fundamental" rights "implicit in the concept of ordered liberty."  McKinney v. Pate, 20 F.3d

---

[4] The Court notes that Plaintiff admits that he had the assistance of counsel in the appeal of his case to the Board of Regents. Am. Compl. ¶ 79.

1550, 1556 (11th Cir. 1994) (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)).

The right to seek counsel for assistance in his proceeding before the Subcommittee is not the type of right that is deemed so fundamental that it implicates substantive due process.  See Washington v. Glucksberg, 521 U.S. 702, 720 (1997) (cataloging recognized fundamental rights protected by substantive due process); Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999) ("A plaintiff in a civil case has no constitutional right to counsel."); see also Plyler v. Doe, 457 U.S. 202, 221 (1982) (holding that a right to education is not a fundamental right); C.B. By & Through Breeding v. Driscoll, 82 F.3d 383, 387 (11th Cir. 1996) ("The right to attend a public school is a state-created, rather than a fundamental, right for the purposes of substantive due process.").  Because Plaintiff has not identified a fundamental right of which he was deprived, Plaintiff has failed to state a claim for a substantive due process violation.[5]  Accordingly, the Court **GRANTS**

---

[5] Plaintiff's claims against the individual Defendants in their individual capacities fail for the additional reason that those defendants are entitled to qualified immunity where Plaintiff has failed to show that he was deprived of a clearly established fundamental constitutional right. See Sarver, 344 F. App'x at 528-29 (affirming the dismissal claims against employees of the North Georgia Technical College based on qualified immunity grounds where the plaintiff failed to sufficiently allege a constitutional violation).

Defendants' Motion to Dismiss as it relates to Plaintiff's Section 1983 substantive due process claims against the individual Defendants in their individual capacities (Count II).

**F.   Plaintiff Fails to Adequately Plead Conspiracy Under Section 1985.**

42 U.S.C. § 1985 provides a means to redress conspiracies which interfere with civil rights through three separate subsections. See 42 U.S.C. § 1985(1)-(3). As articulated by the Supreme Court, the three subsections of 42 U.S.C. § 1985 actually encompass "five classes of prohibited conspiracy." Kush v. Rutledge, 460 U.S. 719, 724 (1983). Specifically, § 1985(1) prohibits conspiracies that interfere with "the performance of official duties by federal officers." Id. Part one of § 1985(2) prohibits conspiracies regarding "the administration of justice in federal courts," while part two of § 1985(2) prohibits conspiracies regarding "the administration of justice in state courts." Id. Finally, part one of § 1985(3) prohibits conspiracies regarding the private enjoyment of "equal protection" and "equal privilege and immunities under the laws," while part two of § 1985(3) prohibits conspiracies regarding "the right to support candidates in federal elections." Id.

"The Supreme Court has made it clear that Section 1985 does not itself create any substantive rights; rather, it serves only as a vehicle for vindicating

22

specific federal rights and privileges which have been defined elsewhere." <u>Benton</u>

<u>v. Cousins Props., Inc.</u>, 230 F. Supp. 2d 1351, 1383 (N.D. Ga. 2002) (citing <u>Great</u>

<u>Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 376 (1979)).

> To proceed under § 1985, Appellant must have been the victim of a conspiracy, the purpose of which was to deprive her of the equal protection of the laws or of equal privileges and immunities under the laws. In civil rights conspiracy actions, conclusory, vague and general allegations of conspiracy are insufficient to support the claim.

<u>Dessasau v. Cook</u>, No. 00-12552, 2001 WL 34395880, at *3 (11th Cir. Mar. 15,

2001) (citation omitted). The allegations regarding the alleged conspiracy in this

case are limited to Plaintiff's allegations enumerating Count 4. Am. Compl.

¶¶ 100-05. Plaintiff fails to articulate which of the three subsections encompass his

§ 1985 claims. <u>See</u> Am. Compl. ¶¶ 100-05. Plaintiff's generalized allegations in

this action only concern the adjudication of the Code of Conduct Complaint and,

therefore, do not concern any federal judicial proceeding. In addition, Plaintiff's

allegations do not concern federal officers or federal elections. Thus, Plaintiff does

not allege a claim under § 1985(1), part one of § 1985(2), or part two of § 1985(3).

To establish a claim under either part two of § 1985(2) or part one of

§ 1985(3), a plaintiff must allege that the named defendants engaged in a

conspiracy based on class-based animus. <u>See Chavis v. Clayton Cty. Sch. Dist.</u>,

300 F.3d 1288, 1292 (11th Cir. 2002) ("The 'equal protection' language included

23

in the second clause of section 1985(2), requires an allegation of class-based animus for the statement of a claim.") (citation omitted); see also Cooksey v. Waters, 435 F. App'x 881, 883 (11th Cir. 2011) (stating that "a § 1985(3) conspiracy must be motivated by a racial or otherwise class-based, invidiously discriminatory animus.") (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971))).

Although Plaintiff brings his § 1985 claim against all Defendants, and he states that "two or more defendants" were involved in conspiracy to deprive him of equal protection "because of his race," Plaintiff does not identify the defendants nor does he explain how they conspired.  In short, Plaintiff's conclusory allegations regarding conspiracy are lacking any support from any factual averments and are too vague to support a claim under Section 1985.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's Section 1985 claims (Counts IV).

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. 9] is **GRANTED**.[6]

---

[6] Plaintiff's Emergency Motion for Preliminary Restraining Order [Doc. 2] is **DENIED AS MOOT**.

The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this ___ day of November, 2018.

_____
MARK H. COHEN
United States District Judge